1  M. Benjamin Eichenberg (Bar No. 270893)
2  SAN FRANCISCO BAYKEEPER
   1736 Franklin Street, Suite 800
3  Oakland, California 94612
   Telephone: (510) 735-9700
4  Facsimile: (510) 735-9160
   Email: ben@baykeeper.org
5
6  Attorneys for Plaintiff
   SAN FRANCISCO BAYKEEPER
7
8
9                  UNITED STATES DISTRICT COURT
10                EASTERN DISTRICT OF CALIFORNIA
11                    SACRAMENTO DIVISION
12
13  SAN FRANCISCO BAYKEEPER, a non-profit      Civil No.
    corporation,
14
15              Plaintiff,                      COMPLAINT FOR DECLARATORY AND
                                                INJUNCTIVE RELIEF AND CIVIL
16        v.                                    PENALTIES

17  VISION RECYCLING; TWDC INDUSTRIES           (Federal Water Pollution Control Act, 33
    Corp. dba VISION RECYCLING; TOM DEL         U.S.C. § 1251 *et seq.*)
18  CONTE; ROBERTO AGUIRRE
19
                Defendants.
20
21
22
23
24
25
26
27
28

COMPLAINT

Plaintiff San Francisco Baykeeper ("Baykeeper"), by and through its counsel, alleges as follows:

### INTRODUCTION

1.     This is a third-party enforcement action, brought pursuant to section 505(a)(1) of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendant Vision Recycling, Defendant TWDC Industries Corp. dba Vision Recycling, Defendant Tom Del Conte, and Defendant Roberto Aguirre (collectively, "Defendants") arising out of Defendants' composting operations located at 1460 Goodyear Road, Benicia, California ("Facility").  Since on or before July 15, 2016, Defendants have been discharging and continue to discharge polluted stormwater from the Facility, in violation of the express terms and conditions of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1342.  Since on or before July 15, 2016, Defendants have also violated the General Industrial Stormwater Permit issued by the State of California, NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 2014-0057-DWQ ("Industrial Stormwater Permit").  Baykeeper seeks a declaratory judgment, injunctive relief, and the award of costs, including attorney and expert witness fees, for Defendants' repeated and ongoing violations of the CWA.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over the parties and this action pursuant to section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

3.     On or about September 18, 2018, Baykeeper provided notice of intent to file suit against Defendants for Defendants' CWA violations ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board") (collectively, "state and federal agencies"), and Defendants, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A).  A copy of the Notice Letter is attached as Exhibit 1.

COMPLAINT                                                                                                          1

4.      More than sixty (60) days have passed since the Notice Letter was mailed to Defendants and the state and federal agencies.  Neither EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  No claim in this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33 U.S.C. § 1319(g).

5.      Venue is proper in the Eastern District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## INTRADISTRICT ASSIGNMENT

6.      Intradistrict assignment of this matter to the Sacramento Division of the Court is appropriate pursuant to Local Rule 120(d).  The events or omissions which give rise to Baykeeper's claims occurred in Solano County, which is under the jurisdiction of the Sacramento Division of the Eastern District of California.

## PARTIES

7.      Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California.  Baykeeper's approximately 1,500 members live and/or recreate in and around the San Francisco Bay area.  Baykeeper is dedicated to protecting the water quality of the San Francisco Bay estuary, including Suisun Bay, for the benefit of its ecosystems and communities.  To further these goals, Baykeeper actively seeks federal and state agency implementation of the CWA, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.      Members of Baykeeper, including citizens, taxpayers, property owners, and residents, live, work, and travel near, and recreate in, San Francisco Bay and its tributaries, into which Defendants discharge pollutants.  Baykeeper members use and enjoy San Francisco Bay and its tributaries for recreational, educational, scientific, conservation, aesthetic, spiritual, and other purposes.  Defendants' discharges of stormwater containing pollutants impair each of these uses.  Thus, the interests of Baykeeper's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the CWA and the Industrial Stormwater Permit.

9.      The July 15, 2016 "Notice of Intent" for the Facility to comply with the terms of the Industrial Stormwater Permit, and each annual report filed for the Facility since 2016 pursuant to the Industrial Stormwater Permit named "Vision Recycling" as the operator and/or owner of the Facility. Vision Recycling's address is 41900 Boscell Rd., Fremont, California.  Plaintiff is therefore informed and believes and thereon alleges that Defendant Vision Recycling is an owner and/or operator of the Facility.

10.      The Alameda County fictitious business name database states that, as of November 5, 2014, Defendant TWDC Industries Corp. is doing business as Vision Recycling.  Plaintiff is therefore informed and believes and thereon alleges that Defendant TWDC Industries Corp. is an operator and/or owner of the Facility.

11.      The website for Vision Recycling states that Defendant Tom Del Conte is the President and Owner of Vision Recycling.  Plaintiff is therefore informed and believes and thereon alleges that Defendant Del Conte is an operator and/or owner of the Facility.

12.      The website for Vision Recycling states that Defendant Roberto Aguirre is the Operations Manager and Owner of Vision Recycling.  Plaintiff is therefore informed and believes and thereon alleges that Defendant Aguirre is an operator and/or owner of the Facility.

## REGULATORY BACKGROUND

### The Problem of Stormwater Pollution

13.      Stormwater runoff is one of the most significant sources of water pollution in the nation and has been recognized as a leading cause of significant and cumulative harmful impacts to the water quality of San Francisco Bay.  With every rainfall event, hundreds of millions of gallons of polluted rainwater flow from local industrial facilities, such as the Facility, and pour into storm drains, local tributaries, and San Francisco Bay.  The Regional Board has found that stormwater pollution is the largest source of pollution entering San Francisco Bay and Bay area surface waters each year.

14.      Stormwater runoff from industrial sites, such as the Facility, causes harm to humans and aquatic life.  In particular, stormwater can contain heavy metal pollutants, such as aluminum, chromium, copper, iron, lead, mercury, nickel, tin, and zinc, as well as high concentrations of suspended solids, and nitrate and nitrite.  Exposure and ingestion of heavy metals can cause health

problems in people and aquatic animals, including neurological, physiological, and reproductive effects. Heavy metals have been shown to alter activity in the tissue and blood of fish.

15.     High concentrations of total suspended solids (TSS) degrade optical water quality by reducing water clarity and decreasing light available to support photosynthesis. TSS have been shown to alter predator-prey relationships. Deposited solids alter habitat for fish, aquatic plants, and benthic organisms. TSS can also be harmful to aquatic life because numerous pollutants, including metals and polycyclic aromatic hydrocarbons (PAHs), are adsorbed onto TSS. Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those sediments. Inorganic sediments, including settleable matter and suspended solids, have been shown to negatively impact species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom surfaces.

### The Clean Water Act

16.     CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into a water of the United States unless the discharge is in compliance with the specific requirements of the CWA. Among other things, CWA section 301(a) prohibits discharges not authorized by or in violation of the terms of a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to CWA section 402, 33 U.S.C. § 1342.

17.     CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved permit program for discharges. In California, EPA has approved the State Board and its nine Regional Boards to administer an NPDES permit program for the State. The State Board and Regional Boards issue individual and general NPDES permits regulating water pollutant discharges from various categories of dischargers.

18.     CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for stormwater discharges "associated with industrial activity."

19.     CWA section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology-based effluent limitations by utilizing the Best Available Technology Economically Achievable (BAT) for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology (BCT) for conventional pollutants. *See* 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

20.     CWA section 505(a)(1) provides for third-party enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

21.     CWA section 505(a) authorizes third-party enforcement actions for injunctive relief. 33 U.S.C. § 1365(a).

22.     CWA violators are subject to an assessment of civil penalties of up to $52,414 per day per violation for violations occurring after November 2, 2015.  33 U.S.C. § 1319(d); 40 C.F.R. §§ 19.1-19.4.

**Water Quality Standards**

23.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality Standards, including water quality objectives and beneficial uses for navigable waters of the United States.  The CWA prohibits discharges from causing or contributing to a violation of such state Water Quality Standards.  *See* 33 U.S.C. § 1311(b)(1)(c); 40 C.F.R. §§ 122.4(a), (d); 40 C.F.R. § 122.44(d)(1).

24.     The State of California regulates water quality through the State Board and nine Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan, which contains Water Quality Standards for water bodies within its geographic area.

25.     The San Francisco Bay Regional Water Quality Control Board has adopted the "San Francisco Bay Basin (Region 2) Water Quality Control Plan" ("Basin Plan"), which sets forth the Water Quality Standards and beneficial uses for San Francisco Bay and its tributaries.

26.     The Basin Plan sets forth, among other things, narrative Water Quality Standards for floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead, mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs.  *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9, 3.3.12-3.3.14, 3.3.21, and Tables 3-3 and 3-3A.

27.     In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco

Bay and its tributaries, unless expressly superseded by the Basin Plan.  65 Fed. Reg. 31,682 (May 18, 2000); 40 C.F.R. § 131.38.

### The Industrial Stormwater Permit

28.     In California, the State Board has elected to issue a single, statewide general permit applicable to all stormwater discharges associated with industrial activity.  On July 1, 2015, the current Industrial Stormwater Permit became effective.

29.     To discharge stormwater lawfully in California, industrial dischargers (i.e., facility operators) must secure coverage under the Industrial Stormwater Permit by filing a "Notice of Intent," and comply with its terms, or obtain and comply with an individual NPDES permit.  Industrial Stormwater Permit, Section I(A) (Findings 8, 12, 17), Attachment C (defining "discharger").

30.     The Industrial Stormwater Permit is an NPDES permit issued pursuant to CWA section 402(p), 33 U.S.C. § 1342(p).  Violations of the Industrial Stormwater Permit are also violations of the CWA.  Industrial Stormwater Permit, Section XXI(A).

31.     The Industrial Stormwater Permit contains certain absolute Discharge Prohibitions.  For instance, the Industrial Stormwater Permit prohibits the direct or indirect discharge of materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States.  Industrial Stormwater Permit, § III(B).

32.     The Industrial Stormwater Permit's Discharge Prohibitions also prohibit stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance.  Industrial Stormwater Permit, §§ III(C), VI(C).

33.     The Industrial Stormwater Permit includes Receiving Water Limitations that prohibit discharges that adversely impact human health or the environment.  Industrial Stormwater Permit, § VI(B).

34.     The Industrial Stormwater Permit's Receiving Water Limitations also prohibit discharges that cause or contribute to an exceedance of any applicable water quality standard contained in a statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  Industrial Stormwater Permit, § VI(A).

35.     Under the CWA and the Industrial Stormwater Permit, dischargers must meet Effluent Limitations that require dischargers to employ Best Management Practices (BMPs) that constitute BAT and BCT to reduce or eliminate stormwater pollution.  33 U.S.C. § 1311(b); Industrial Stormwater Permit, Section X(H).

36.     EPA has developed benchmark levels ("Benchmarks") that are objective guidelines to evaluate whether a permittee's BMPs achieve compliance with the BAT/BCT standards.  Final National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges from Industrial Activities ("Multi-Sector Permit"), 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); Multi-Sector Permit, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008); Multi-Sector Permit, 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000).

37.     The Industrial Stormwater Permit includes Numeric Action Limits (NALs) that are based on EPA's Benchmarks.  Industrial Stormwater Permit, Section I(M) (Finding 62).  The NALs indicate "the overall pollutant control performance at any given facility."  *Id*. at Section I(M) (Findings 61-63).

38.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan (SWPPP) at the time industrial activities begin.  Industrial Stormwater Permit, Sections I(I) (Finding 54), X(B).  The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of stormwater and authorized non-stormwater discharges from the facility.  Industrial Stormwater Permit, Section X(G).  The SWPPP must identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-stormwater discharges.  Industrial Stormwater Permit, Section X(H).  The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT. Industrial Stormwater Permit, Sections I(D) (Finding 32), V(A).

39.     The SWPPP must include:  a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutant control measures; a description of stormwater management practices; a description of the

BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges; the identification and elimination of non-stormwater discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP.  Industrial Stormwater Permit, Section X.

40.    The Industrial Stormwater Permit also requires a discharger to properly operate and maintain any facilities and systems of treatment and control installed or used to achieve compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at all times.  Industrial Stormwater Permit, Section XXI(F).

41.    The SWPPP and site maps must be assessed annually and revised as necessary to ensure accuracy and effectiveness.  Industrial Stormwater Permit, Sections I(J) (Finding 55), X(B)(1).

42.    The Industrial Stormwater Permit requires dischargers to monitor and sample stormwater discharges to ensure that the facility is complying with the terms of the permit.  Industrial Stormwater Permit, Sections I(J) (Findings 55-56); XI.

43.    Pursuant to the monitoring and reporting program (MRP) requirements of the Industrial Stormwater Permit, dischargers must conduct ongoing visual observations of stormwater and non-stormwater discharges and record responsive measures taken to eliminate unauthorized non-stormwater discharges and to reduce or prevent pollutants in stormwater and authorized non-stormwater discharges.  Industrial Stormwater Permit, Section XI(A).

44.    Dischargers must collect a specific number of samples of stormwater discharges from all locations where stormwater may be discharged from the facility.  Industrial Stormwater Permit, Section XI(B)(4)-(5).

45.    The Industrial Stormwater Permit requires dischargers to sample for TSS, oil and grease, and pH; parameters associated with the facility's industrial operations; parameters identified in Table 1 of the Industrial Stormwater Permit based on the facility's standard industrial classification (SIC) code; and applicable industrial parameters related to receiving waters with 303(d) listed impairments or approved Total Maximum Daily Loads.  Industrial Stormwater Permit, Section

XI(B)(6)(a)-(e).

46.     The Industrial Stormwater Permit requires operators of facilities that fall under SIC Code 287X, such as the Facility, to analyze stormwater samples for iron, nitrate + nitrite (N+N), lead, zinc, and phosphorus.

**The Industrial Stormwater Permit Exceedance Response Actions Requirements**

47.     The Industrial Stormwater Permit requires dischargers to complete certain Exceedance Response Actions (ERAs) based on stormwater sampling results in order to assist dischargers in complying with the Industrial Stormwater Permit.  *See* Industrial Stormwater Permit, § I(M) (Finding 64).

48.     When the Industrial Stormwater Permit became effective on July 1, 2015, all dischargers were in "Baseline status."  *See* Industrial Stormwater Permit, Section XII(B).

49.     A discharger's Baseline status for any given parameter changes to "Level 1 status" if sampling results indicate an exceedance of an annual average or instantaneous NAL for that parameter.  Industrial Stormwater Permit, § XII(C).

50.     Level 1 status commences on July 1 following the reporting year during which the exceedance(s) occurred.  *See* Industrial Stormwater Permit, Section XII(C).  By October 1 following commencement of Level 1 status, dischargers are required to "complete an evaluation, with the assistance of a [Qualified Industrial Stormwater Practitioner (QISP)], of the industrial pollutant sources at the facility that are or may be related to the NAL exceedance(s); and identify in the evaluation the corresponding BMPs in the SWPPP and any additional BMPs and SWPPP revisions necessary to prevent future NAL exceedances and to comply with the requirements of the [2015] Permit."  *See* Industrial Stormwater Permit, § XII(C)(1)(a)-(c).

51.      Based upon this Level 1 status evaluation, the discharger is required to, as soon as practicable but no later than January 1 following commencement of Level 1 status, revise the SWPPP as necessary and implement any additional BMPs identified in the evaluation, certify and submit via the State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System (SMARTS) database a Level 1 ERA Report prepared by a QISP that includes a summary of the Level 1 ERA Evaluation and a detailed description of the SWPPP revisions and any additional

BMPs for each parameter that exceeded an NAL.  *See* Industrial Stormwater Permit, Section XII(C)(2)(a)(i)-(ii).

52.     A discharger in Level 1 status must also certify and submit via SMARTS the QISP's identification number, name, and contact information (telephone number, e-mail address) no later than January 1 following commencement of Level 1 status.  *See* Industrial Stormwater Permit, Section XII(C)(2)(a)(iii).

53.     A discharger in Level 1 status for a parameter will return to Baseline status once the discharger has completed the Level 1 ERA Report and implemented all identified additional BMPs, and results from four consecutive qualified storm events that were sampled subsequent to BMP implementation indicate no additional NAL exceedances for that parameter.  *See* Industrial Stormwater Permit, Section XII(C)(2)(b).

54.     A discharger in Level 1 status for any parameter changes to Level 2 status on July 1 following the reporting year in which the NAL exceedance(s) occurred for that same parameter.  *See* Industrial Stormwater Permit, Section XII(D).  By January 1 following commencement of Level 2 status, the discharger is required to submit via SMARTS a Level 2 ERA Action Plan to address NAL exceedance(s) in the drainage areas where the NAL exceedances occurred.  *See* Industrial Stormwater Permit, Section XII(D)(1)(a)-(e).  The Level 2 ERA Action Plan must include a schedule and detailed description of the tasks required to complete the discharger's selected demonstration(s).  *Id*.  The discharger is required to submit via SMARTS a Level 2 ERA Technical Report by January 1 of the reporting year following the submittal of the Level 2 ERA Action Plan.  *See* Industrial Stormwater Permit, Section XII(D)(2)(a)-(c).

## STATEMENT OF FACTS

### The Facility's Operations and Stormwater Discharges

55.     Defendants operate the Facility located at 1460 Goodyear Road, Benicia, California.

56.     The Facility discharges stormwater indirectly into Suisun Marsh wetlands and Suisun Bay.

57.     Suisun Bay and Suisun Marsh are waters of the United States.

58.     The Facility is regulated by the Industrial Stormwater Permit.

COMPLAINT                                                                                                          10

59.     Defendants submitted a "Notice of Intent" to comply with the Industrial Stormwater Permit to the State Board on or around July 15, 2016.

60.     Operations at the Facility generally consist of, but are not limited to, manufacturing and supply of landscape materials (compost, mulch, soil blends).

61.     Defendants have self-identified the Facility as falling under SIC code 2875.

62.     Some operations at the Facility occur outdoors and are causing pollutants to be exposed to rainfall.

63.     The industrial materials stored and the pollutants generated at the Facility are exposed to stormwater flows.

64.     Activities at the Facility generate significant debris and particulate matter, which contain pollutants and settle on surfaces within the Facility.  During rain events, this pollution washes off of those surfaces and into stormwater discharge points, which indirectly flow to Suisun Bay.

65.     The types of pollutants that the Facility releases into the immediate environment are known to include or have the potential to include TSS, pH, iron, lead, zinc, oil and grease, phosphorus, N+N, and other pollutants.

66.     Defendants' sampling results since July 15, 2016 indicate that the Facility's stormwater discharges have consistently exceeded Benchmarks for TSS, pH, iron, phosphorus, N+N, and zinc.

67.     Based on self-reported data from stormwater samples, and as of July 1, 2017, Defendants were in Level 1 status for TSS, iron, and phosphorus based on NAL exceedances during the 2016-2017 reporting period.

68.     During the 2016-2017 reporting period, the annual average for TSS was 220 mg/L, approximately two times above the NAL. The annual average for iron during the 2016-2017 reporting period was 12.0 mg/L, approximately twelve times the NAL. The annual average for phosphorus during the 2016-2017 reporting period was 2.3 mg/L, above the NAL.

69.     Defendants submitted on SMARTS their Level 1 status evaluation and Level 1 ERA Report for TSS, iron, and phosphorus, dated December 21, 2017 on December 28, 2017.

70.     Based on self-reported data from stormwater samples, and as of July 1, 2018, Defendants were in Level 1 status for N+N and pH based on NAL exceedances during the 2017-2018

reporting period.

71.     Based on self-reported data from stormwater samples, and as of July 1, 2018, Defendants were in Level 2 status for TSS, iron, and phosphorus based on NAL exceedances during the 2017-2018 reporting period.

72.     The annual average for N+N during the 2017-2018 reporting period was 1.4 mg/L, approximately two times the NAL.  During the 2017-2018 reporting period, Defendants reported pH of 5.0 SU, outside the NAL range.  The annual average for TSS during the 2017-2018 reporting period was 370 mg/L, approximately four times the NAL. The annual average for iron during the 2017-2018 reporting period was 7.8 mg/L, approximately eight times the NAL.  The annual average for phosphorus during the 2017-2018 reporting period was 18 mg/L, approximately nine times the NAL.

**The Facility's SWPPP**

73.     Neither Defendants' past nor current SWPPPs include adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels and/or meet applicable Water Quality Standards.

74.     Defendants' SWPPP fails to include the information required by the Industrial Stormwater Permit, including but not limited to, the following:

- A list of alternate team members to perform SWPPP activities when regular members of the pollution prevention team are absent;
- Identification of portions of any drainage area impacted by discharges from surrounding areas;
- Identification of areas of soil erosion;
- Identification and description of industrial storage areas, shipping and receiving areas, material handling and processing areas, waste treatment and disposal areas, dust or particulate generating areas, cleaning and material reuse areas, and other areas of industrial activity that may have potential pollutant sources;
- Identification of locations where each industrial material is stored, received, shipped or handled;
- Description of the characteristics of industrial materials used in or resulting from industrial

processes;

- Description of each material handling and storage area, including: the characteristics of industrial materials handled or stored; the shipping, receiving, and loading procedures; and the spill or leak prevention and response procedures;
- Identification of all non-stormwater discharges, and drainage areas;
- Identification of all drain connections to the stormwater conveyance system;
- Description of how all unauthorized non-stormwater discharges have been eliminated;
- Description of all non-stormwater discharges, including the source, quantity, frequency, and characteristics of the non-stormwater discharges, associated drainage area, and whether it is an authorized or unauthorized non-stormwater discharge;
- Description of the approximate quantity, physical characteristics, and locations of each industrial material handled, produced, stored, recycled, or disposed;
- Description of the degree to which pollutants associated with industrial materials may be exposed to, and mobilized by contact with stormwater;
- Identification of the direct and indirect pathways by which pollutants associated with industrial materials may be exposed to stormwater or authorized non-stormwater discharges;
- All sampling, visual observation, and inspection records;
- Identification of any areas of the Facility where minimum BMPs will not adequately reduce or prevent pollutants in stormwater discharges and identification of advanced BMPs for those areas;
- Identification and description of the effectiveness of existing BMPs to reduce or prevent pollutants in stormwater or authorized non-stormwater discharges; and
- Description of the estimated effectiveness of implementing minimum BMPs.

**Activities Contributing to CWA Violations**

75.     Defendants have not developed and/or implemented an adequate SWPPP at the Facility.

76.     Defendants have not developed and/or implemented BMPs that adequately minimize

the exposure of pollutants to stormwater at the Facility.

77.     Defendants have not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

78.     Defendants have not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

79.     Defendants have not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute BAT/BCT.

80.     Defendants have not developed and/or implemented adequate BMPs at the Facility to achieve stormwater discharges that meet Benchmarks, NALs, and/or applicable Water Quality Standards.

81.     Defendants have not adequately evaluated and revised the Facility's SWPPP to address these failures.

82.     Defendants have failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the Industrial Stormwater Permit and its SWPPP requirements.

83.     Defendants have not developed and/or implemented an adequate MRP at the Facility.

84.     Defendants' monitoring and reporting activities have not resulted in practices that adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

85.     Defendants' monitoring activities have not effectively identified compliance problems at the Facility or resulted in effective revisions of the SWPPP.

86.     Due to Defendants' lack of effective pollution prevention measures, including effective BMPs, and their failure to implement an effective MRP, stormwater from the Facility becomes polluted with many constituents.  Pollutants become entrained in stormwater when such water flows over and across the outdoor areas of the Facility.

87.     Defendants' annual stormwater sampling results indicate that the Facility's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the Industrial Stormwater Permit and the CWA.

88.     Defendants' annual stormwater sampling results indicate that the Facility's discharges

of stormwater are regularly contaminated with higher levels of pollutants than are consistent with BMPs that constitute BAT/BCT.

89.     Defendants' repeated stormwater exceedances of Benchmarks since July 15, 2016 for pollutants, including TSS, pH, iron, phosphorus, zinc and N+N, indicate that Defendants have failed and continue to fail to meet BAT/BCT.

90.     Defendants' sampling results indicate that the Facility's discharges are causing or threatening to cause pollution, contamination, and/or nuisance; adversely impact human health or the environment; and violate applicable narrative Water Quality Standards and numeric Water Quality Standards for zinc and pH.

91.     Defendants have not developed and/or implemented an adequate Level 1 status evaluation and Level 1 ERA Report at the Facility for TSS, iron, and phosphorus by January 1, 2017.

## CLAIMS

## FIRST CLAIM FOR RELIEF

**Discharges in Excess of Effluent Limitations in Violation of the Industrial Stormwater Permit and the Clean Water Act**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

92.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

93.     The CWA and the Industrial Stormwater Permit include effluent limitations, which prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of BAT for toxic pollutants and BCT for conventional pollutants.

94.     Defendants have discharged and continue to discharge stormwater from the Facility containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements during every significant rain event (defined by EPA as a rainfall event generating 0.1 inches or more of rain) occurring from July 15, 2016 through the present.  Defendants' failure to develop and/or implement BMPs adequate to achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of the Industrial Stormwater Permit and the CWA.  *See* Industrial Stormwater Permit, Sections I(D) (Finding 32), V(A); 33 U.S.C. § 1311(b).

95.     Each day, since at least July 15, 2016, that Defendants have discharged stormwater from the Facility containing pollutants in excess of BAT/BCT requirements is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

96.     Defendants' CWA violations described in the paragraphs above will continue in the future, as violations of Sections I(D) and V(A) of the Industrial Stormwater Permit, until Defendants develop and implement BMPs at the Facility adequate to achieve pollutant discharge reductions attainable via BAT and BCT.

97.     By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. sections 1319(d) and 1365.

98.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

99.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CLAIM FOR RELIEF

**Discharges in Excess of Discharge Prohibitions and Receiving Water Limitations in Violation of the Industrial Stormwater Permit and the Clean Water Act**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

100.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

101.     Discharge Prohibitions of the Industrial Stormwater Permit prohibit stormwater discharges from causing or threatening to cause pollution, contamination, or nuisance.  *See* Industrial Stormwater Permit, Sections III(C), VI(C).

102.     Receiving Water Limitations of the Industrial Stormwater Permit require that stormwater discharges and authorized non-stormwater discharges shall not adversely impact human health or the environment.  *See* Industrial Stormwater Permit, Section VI(B).

103.    Finally, Receiving Water Limitations of the Industrial Stormwater Permit prohibit discharges that cause or contribute to a violation of any water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  Industrial Stormwater Permit, Section VI(A).

104.    Since at least July 15, 2016, Defendants have been discharging polluted stormwater from the Facility in violation of the Discharge Prohibitions and Receiving Water Limitations of the Industrial Stormwater Permit during every significant rain event (defined by EPA as a rainfall event generating 0.1 inches or more of rain).  *See* Exhibit 1, Notice Letter at Attachment 3.

105.    The polluted stormwater discharged from the Facility during every significant rain event contains pollutants harmful to fish, plants, birds, and human health that have adversely affected, and continue to adversely affect, human health and the environment in violation of Receiving Water Limitation at Section VI(B) of the Industrial Stormwater Permit.

106.     Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in violation of the Discharge Prohibition and Receiving Water Limitation at Sections III(C) and VI(C) of the Industrial Stormwater Permit.

107.    Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause or contribute to violations of the Water Quality Standards set forth in the Basin Plan in violation of Receiving Water Limitation at Section VI(A) of the Industrial Stormwater Permit.

108.    Each day, since at least July 15, 2016, that Defendants have discharged polluted stormwater from the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

109.    By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. sections 1319(d) and 1365.

110.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at

law.

111.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## THIRD CLAIM FOR RELIEF

**Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

112.    Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

113.    The Industrial Stormwater Permit requires dischargers of stormwater associated with industrial activity to develop and implement an adequate SWPPP when they commence industrial activity.  Industrial Stormwater Permit, Section X(B).

114.    Defendants, as of July 15, 2016, have commenced industrial activity and continue to conduct industrial activity at the Facility.

115.    Defendants have failed and continue to fail to develop and implement an adequate SWPPP or implement all necessary revisions to the SWPPP for the Facility as required by the Industrial Stormwater Permit.

116.    Defendants have failed and continue to fail to develop or implement a SWPPP for the Facility that includes BMPs adequate to meet the requirements of the Industrial Stormwater Permit, specifically, Section X of the Industrial Stormwater Permit.

117.    Defendants have failed and continue to fail to adequately develop or implement a SWPPP at the Facility that prevents discharges from violating the Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations of the Industrial Stormwater Permit.

118.    Each day since July 15, 2016 that Defendants have failed to adequately develop and/or implement a SWPPP for the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

119.    Defendants have been in violation of the Industrial Stormwater Permit's SWPPP requirements every day since July 15, 2016.  Defendants will continue to be in violation of the SWPPP

requirements each day that Defendants fail to develop and fully implement an adequate SWPPP for the Facility.

120.    By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. sections 1319(d) and 1365.

121.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

122.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

### FOURTH CLAIM FOR RELIEF

**Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Plan in Violation of the Industrial Stormwater Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

123.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

124.    Defendants have failed and continue to fail to develop an adequate MRP for the Facility, in violation of the Industrial Stormwater Permit.

125.    Defendants have failed to conform the MRP for the Facility with the requirements of the Industrial Stormwater Permit, in violation of the Industrial Stormwater Permit.

126.    Defendants have failed and continue to fail to adequately implement the MRP for the Facility, in violation of the Industrial Stormwater Permit.

127.    Defendants have failed and continue to fail to adequately revise the MRP for the Facility, in violation of the Industrial Stormwater Permit.

128.    Defendants have been in violation of the Industrial Stormwater Permit's monitoring and reporting requirements at the Facility every day from July 15, 2016 to the present.

129.    Defendants' violations of the Industrial Stormwater Permit monitoring and reporting

requirements and the CWA at the Facility are ongoing and continuous.

130.    Defendants will continue to be in violation of Section XI of the Industrial Stormwater Permit and the CWA each and every day Defendants fail to adequately develop, implement, and/or revise the MRP for the Facility.

131.    Each and every violation of the Industrial Stormwater Permit's monitoring and reporting requirements at the Facility is a separate and distinct violation of the CWA.

132.    An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and Plaintiff's members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

133.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays judgment against the Defendants as set forth hereafter.

## **RELIEF REQUESTED**

Baykeeper respectfully requests this Court to grant the following relief:

1.    Declare Defendants to have violated and to be in violation of sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the Facility in violation of a permit issued pursuant to section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include the Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology requirements, and for failing to comply with the substantive and procedural requirements of the Industrial Stormwater Permit;

2.    Enjoin Defendants from discharging pollutants from the Facility to stormwater discharge points, which discharge to Suisun Bay;

3.    Order Defendants to restore all receiving waters damaged by Defendants' illegal discharges of pollutants from the Facility;

4.    Enjoin Defendants from violating sections 301(a) and (b) and section 402(p) of the Clean Water Act and from violating the substantive and procedural requirements of the Industrial Stormwater Permit at the Facility;

COMPLAINT                                                                                          20

5.      Order Defendants to pay civil penalties for each violation of the CWA at $52,414,00.00 per day per violation for violations that occurred after November 2, 2015, as permitted by CWA section 309(d), 33 U.S.C. section 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. section 19.4 (2009);

6.      Award Plaintiff its costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA section 505(d), 33 U.S.C. § 1365(d);

7.      Award such other relief as this Court may deem appropriate.


Dated:  December 6, 2018                    Respectfully Submitted,

                                            SAN FRANCISCO BAYKEEPER

                                            /s/
                                            _____

                                            M. Benjamin Eichenberg
                                            Attorney for Plaintiff
                                            SAN FRANCISCO BAYKEEPER